Next case, called more likely as Dillard v. Dillard et al. Counsel, whenever you're ready, please proceed. Thank you. May it please the court, counsel, my name is Jonathan Cantrell and I represent the plaintiff and appellant, in this case, Jim Dillard. First of all, I'd like to apologize for the length of the record. Fortunately, I think the issue before the court is very narrow. And the second issue before the court, I believe the resolution of that issue is entirely dependent on the first issue. You don't have to apologize for the length of the record. We're happy to be informed. Thank you, Your Honor. Thank you, Your Honor. I believe a brief recitation of the facts will be helpful as is so often the case. In intra-family litigation, it gets quite contentious and an understanding of the relationships is essential. One of the defendants, Gary Dillard, is the biological brother of my client, Jimmy Dillard. The other defendants, Gregory Dillard and Lisa McGuire, are the children of Gary Dillard, their co-defendant. Finally, we have the Gary and Mary Ann Dillard Trusts as defendants and the Dillard Farm Family Limited Partnership, which is an entity of which Gregory Dillard is the registered agent. Back in 1992, Catherine Dillard, the mother of my client and Gary Dillard, created two trusts. First, the Catherine Dillard Trust, into which she poured presumably most of her assets, and later amended that trust. So that distributions under the Catherine Dillard Trust, after her death, would go into a new trust, the Jimmy Dillard Trust, as opposed to my client individually, Jimmy Dillard. But the half of the inheritance, more or less half, that went to Gary Dillard would still go to him individually. The second trust was created, the Jimmy Dillard Trust, and all of the assets that he would inherit would be managed by his brother, Gary, under the terms of that trust. In 2003, and between 1992 and 2003, Catherine Dillard was initially the sole trustee, subsequently was a co-trustee along with her son, the defendant, Gary Dillard. When she passed away in 2003, subsequently in 2004, my client filed this lawsuit, initially only seeking an accounting from Gary Dillard and asking the lower court if any amounts were found to be due and owing to Jimmy Dillard to order them to be paid to me. In 2005, Gary Dillard resigned as trustee of both trusts. His son took over, Gregory Dillard, as trustee. Excuse me, I said 2005. I think that was in 2008. I'm not sure on the dates, but the big transaction that we'll hear about today occurred in March 2009. In March 2009, Gregory Dillard, who at the time was serving as trustee of both the Catherine Dillard Trust and the Jimmy Dillard Trust, engages in a transaction we've been calling land swap. And what Gregory Dillard did as trustee of those trusts is he took, there was one parcel of farmland, mostly farmland, an 80-acre parcel that had been in the Jimmy Dillard Trust for many years. Seventy-two percent of it is farmland, and it has a one-half interest in the mineral rights. That 80-acre parcel, which is mostly farmland, was transferred from the Jimmy Dillard Trust to the Gary and Mary Ann Dillard Trusts. At the time, under the terms of the Jimmy Dillard Trust, my client was automatically entitled to the income from that farmland on a yearly basis. The trustee has the discretion to give more, distribute from the corpus, if necessary, of the trust in order to maintain my client's accustomed manner of living. So that high-income producing farmland was moved to the Gary and Mary Ann Dillard Trusts. Now, the critical part of the transaction is what was done with the land that was in the Catherine Dillard Trust because of Section 7 of the Catherine Dillard Trust that's before us today. There were five parcels of real estate in the Catherine Dillard Trust at the time of her death in 2003. On this date, March 26, 2009, Gregory Dillard conveys a 20-acre parcel, which includes the house in which my client resides and 12 acres of farmland, to the Gary and Mary Ann Dillard Trusts, his parents' trust. He conveys a 78-acre parcel, which is 100% farmland, to the Gary and Mary Ann Dillard Trusts. And then finally, he conveys a 120-acre parcel, which is 96% farmland, to the Gary and Mary Ann Dillard Trusts. On the same day, there are two other parcels in the Catherine Dillard Trusts. One is an 88-acre parcel in which the Catherine Dillard Trusts had a two-thirds interest, and that's mostly woodlands and pastures, has generated very little income over the years. He conveys that to my client's trust, the Jimmy Dillard Trust. And a 78-acre parcel that's mostly woodlands and pastures is also conveyed to the Jimmy Dillard Trust. And I think over $200,000 in cash to make up for the difference was moved into the Jimmy Dillard Trust. And there were appraisals to show that these figures matched. But this was done on March 26, 2009, less than six years after the death of Catherine Dillard. And the reason why we're here today is that it is plaintiff's position that to engage in those transactions on March 26, 2009, was contrary to the provisions of the Catherine Dillard Trust. And the Supreme Court has said the trustee's highest obligation is to perform what is required and as outlined in the trust document itself. To fail to administer the trust according to its own terms is a breach of fiduciary duty as a matter of law, unless, of course, the trust contains provisions that are contrary to public policy. So I direct the court's attention to Section 7 of the Catherine Dillard Trust, which is contained within the appendix on page 834. And that's the critical section, the introduction to that Section 7. A states, upon the death of the Grand Tour, Catherine Dillard, and after satisfaction of Sections 6 and 11, which are inapplicable, the trustees shall divide and distribute the trust as then constituted as follows. And I think that language is very important. It's an introduction to the distributive scheme that Catherine Dillard established that would only come into place after her death. The sub-topic, the headline for Section 7 is Distributions After Death of the Grand Tour. Introductory paragraph, the trustees shall divide and distribute the trust as then constituted as follows. Subsection I are cash gifts to the daughters that are not part of this litigation. Subsection II is a personal property gift to Jim Dillard. It's also relevant. And finally, we get to Subsection III, so 7A3, if you will. And that states, third, the balance of the trust estate exclusive of real estate. So in other words, everything else in the trust except the real estate is going to be taken care of in this sense. And that sense is a specific gift of personal property. It's not particularly relevant for this appeal other than it shows that everything has been dispersed except the real estate. The second sense in 7A3 states, all real estate, including coal, oil, gas, and other mineral rights owned by the trust, shall continue to be held in trust and administered as follows. So it's a very specific reference to go back to the introduction 7A, the trust as then constituted on the date of her death. And the real estate owned at that time shall continue to be held in trust and administered as follows. And she provides an administrative scheme in subsections A and B to that 7A3 that I just read. Subsection A is simply all net income will be distributed to Jimmy Dillard, which is actually Jimmy Dillard Trust by virtue of an amendment, and Gary Dillard on an annual basis. That's not at issue. Subsection B is at issue. It states, the trust shall continue for a term of 10 years after the death of a grantor, unless both Jimmy Dillard and Gary Dillard, or the survivor of them, agree or direct otherwise. First sense. Second sense. Only Jimmy Dillard and Gary Dillard shall have the right to agree or direct otherwise. Thus, if both of them die, there is no one who can change the term of the trust. That's the second sense, period. Now, I'm almost embarrassed to admit that I think it was upon writing my reply brief, perhaps even after upon rereading it, and reading that in conjunction with the defendant's briefs, that I realized that I think I did a poor job of explaining my argument all the way throughout this litigation until now. And I think they're right insofar as Jimmy and Gary Dillard's agreement is required to change the term of the trust, which is a 10-year term after her death. That doesn't, in other words, their agreement is not required to move real estate. But what I realized upon writing my reply brief is that no one can change what is supposed to be done with the real estate. The introduction to 7A says, the trust, as then constituted, shall be distributed as follows. You know, it makes it clear, subsections I, double I, and triple I. All other assets of the trust are gone by the time we get to the sentence that addresses the real estate. And then as to the real estate, it says, all real estate shall continue to be held in trust and administered as follows. I think Katherine Dillard's intent is clear. She wanted her sons, Jimmy Dillard through a trust, but to have an interest as tenants in common in the farmland and the other land that was part of the family for a long, long time. It was her land. She had the right to do that. I don't think Section 7 is ambiguous. And so the third sentence of 7A, triple I, little b says, after the two sentences I read about the 10-year term, it states, upon termination of the trust, all principal and undistributed income shall be distributed equally to Jimmy R. Dillard and Gary Dillard as tenants in common. And it goes on, in case one of them is not living, but that didn't take place here. So that subsection B, that last sentence, upon termination of the trust, regardless of when the term has ended, whether it's in less than 10 years or if they waive the whole 10 years as she initially set forth as a scheme, the whatever's left goes to them as tenants in common, equal shares as tenants in common. And obviously the sections that precede that refer to the real estate that would be left after everything else was distributed. And the introduction of Section 7 referred to the trust as then constituted, meaning on the date of her death. So I think it's a case where the lower court misinterpreted the Katherine Dillard Trust as allowableness. And the defendants primarily rely on Section 12 of the trust, which is a boilerplate language, a laundry list of powers that the trustees have that we, as attorneys, we've seen in many, many trusts, one of them being the power to convey and exchange real estate. And my response to that argument is the introduction to Section 12 states powers of trustee, and I'm not going to read the whole thing to bore you. But the trustees and successor trustees are hereby empowered with, given and granted the following powers to be construed broadly, which may be exercised by said trustees or successor trustees without application to any court, without court authorization or approval, as in their discretion said trustees or successor trustees may deem advisable, and which powers are in addition to and not in limitation of their common law and statutory powers, parenthesis, unless otherwise specified herein. Now, in the briefs, they've argued that unless otherwise specified herein is a reference to the last clause of that introductory sentence. In other words, the defendant's argument is these powers are in addition to and not in limitation of their common law and statutory powers unless otherwise specified herein. So I don't really understand how that could be accomplished, but I'm sure it could. But I believe the introduction to Section 12 is a single, it's a single sentence, one sentence. There's several comments, but it's one sentence. At the end of that sentence, it says, unless otherwise specified herein, colon, and then we have several pages of broad powers. So unless otherwise specified herein means somewhere else in the trust document she can specify otherwise as to the trustees' powers. And she did so in Section 7, a very detailed administrative scheme that obviously required a lot of forethought and planning, and Section 7 only applies upon her death. While she was alive, between 1992 and 2003, she, and when Gary Dillard was a co-trustee of hers, could have engaged in all kinds of real estate transactions. But when she died, she wanted Jimmy Dillard, my client, to have the benefit of that guaranteed stream of income from the farmland, which is now all gone. The farmland has been rented to the same family for many, many, many years and generated significant income. In other terms of the Jimmy Dillard Trust, my client is allowed the income, that's a bare minimum. He gets the income on an annual basis. Now that there's no farmland in the Jimmy Dillard Trust, there's essentially no income. The corpus of the trust is being used to maintain his accustomed manner of living. Another argument that's been raised in the brief is that under the Trust and Trustees Act, because Gregory Dillard, who was the trustee at the time these transactions were consummated, hired an appraiser, hired an attorney to give him advice in advance, the court should affirm, the lower court's ruling, that he was allowed to do this. It's not a breach of fiduciary duty, and he cites to a section of the Trust and Trustees Act, which states essentially that if a trustee uses reasonable proofs, they shouldn't be liable for their actions. But it doesn't trump what's within the Catherine Dillard Trust. Section 3 of the Trust and Trustees Act, which is essentially an introduction by the legislation, says that the provisions of this act apply to the trust to the extent that they are not inconsistent with the provisions of the instrument. The Trust and Trustees Act doesn't change a trustee's highest and most important obligation, which is to administer the trust according to its own terms, so long as those terms are not against public policy. I also think it's noteworthy that even though, as I've mentioned, perhaps obtaining Jimmy Dillard's agreement to the transaction in advance doesn't really affect our argument that that transaction was not allowed, moving that real estate out of the Catherine Dillard Trust. It's worth mentioning that during Gregory Dillard's deposition, he admitted that his father encouraged him to go through with this transaction. I think that suggests that the duty of perfect good faith on a trustee was certainly at least infringed upon when his biological father was encouraging him to do this. And I think there's no dispute as to the rules that apply here in interpreting Section 7 of the Trust. Obviously, what the court must do first and foremost is determine Catherine Dillard's intent and give effect to that intent. One of the rules of construction that comes into play is if there are provisions that seem to be conflicting, the court should try to read them in harmony. And I think by giving effect to unless otherwise specified herein in Section 12, that gives effect to the Section 7 distribution scheme that only applies after her death. And last but not least, one of the most important rules of construction in this case, the more specific provisions control over the general. The only provision they can rely on to say that this transaction was allowed is a laundry list of powers given to the trustee. Whereas we have a very specific post-death distribution scheme clearly established to guarantee that Jimmy Dillard would benefit from some kind of steady stream of income over the years. The second issue in our motion before the lower court, we had asked that a receiver be appointed to take over. Lisa McGuire is the current trustee. She's the, of both trusts. She is the biological daughter of Gary Dillard and the sister of Gregory Dillard, who did these transactions. And admittedly, the standard of review is abuse of discretion on that issue. But I think that because the lower court misinterpreted the Katharine Dillard Trust as a matter of law, this court has the authority to say you need to appoint a receiver. Because if the plaintiff wins on the first issue, if the lower court's reversed, which I don't think I said, but obviously it's a de novo question. We're interpreting the Katharine Dillard Trust. And if this court reverses on that issue, the plaintiff will then be tasked with imposing constructive trust on the third party defendants. The Gary, the third party, not as a matter of procedure, but what I'm calling the third party. The Gary Mary Ann Dillard Trust and the limited partnership that was created in order to obtain the farm income that has been dispersed between 2009 and the present. So I think to put that duty into the hands of Lisa McGuire creates an inherent conflict of interest. And if the court reverses on the first issue, that these transactions were in breach of the Katharine Dillard Trust. Then I think it follows that the court should reverse on the second issue and award a receiver to be appointed in order to allow the plaintiff to recover those assets. And I have one more point. Section 7 of the trust, back to section 7A3, subsection B that addresses the term of the trust. And as I discussed, whether or not Jimmy Dillard and Gary Dillard's agreement was necessary for this transaction to move forward. Well, now that after all these years that I believe I've been enlightened by reading this again and again. When it states the trust shall continue for a term of 10 years after the death of Grant Orr unless they both agree. That's the first sentence. The second sentence, only Jimmy and Gary Dillard have the right to agree or direct otherwise. And the argument from them has been that's only a limitation on the 10-year term. And today I'm saying, well, I agree with that. But nonetheless, the trust as then constituted had to be distributed. The land, in other words, when she died had to stay in the trust and ultimately be distributed to the Jimmy Dillard Trust and Gary Dillard and his tenants in common. And we know by following little i, double i, triple i that all other assets of the trust are gone. So here we are in subsection B and the last sentence states, upon termination of the trust. So in other words, they distributed the real estate. That was the last – those were the last assets of the trust. The direction is, upon termination of the trust, all principal and undistributed income shall be distributed equally to Jimmy Dillard and Gary Dillard as tenants in common. That's not what this transaction did. It took the farmland, went to the Gary and Marianne Dillard Trust, and it took the woodlands and pastures and some cash and put those into the Jimmy Dillard Trust. So upon termination of the trust, for all practical purposes, March 26, 2009, is the termination of the trust. So all other trust assets are gone. There's seven a, i, double i, triple i. And we'll get to this part of the trust dealing with the real estate. That's all that's left. They terminated the trust after six years without obtaining Jimmy Dillard's agreement. And in other words, I think there are two ways to see this as a breach of the trust. Unless the court has further questions, I'll step back and address you. Thank you very much. I completely agree. Thank you. Thank you, counsel. Your Honor, may I please report? My name is Brandon Powell, and I represent Lisa McGuire, the current trustee of the Jimmy Dillard and Catherine Dillard Trusts. Also present today are Richard Krueger, representing Gregory Dillard and the Dillard Farm Family Limited Partnership, and Mr. Robert Wilson, representing Marianne, Gary, and Dillard. Your Honors, my client became trustee of these trusts in 2011, more than two years after the land swap transaction, which is the primary focus of the appeal. And there have been no allegations that my client was involved in that transaction. Therefore, Mr. Wilson and Mr. Krueger will address the land swap transaction and other related issues. And I will briefly address the only issue relevant to my client, which is the trial court's denial of the plaintiff's motion to appoint a receiver in this case. Because that denial of that motion was proper, we ask this court to affirm the trial court's decision. Your Honor, the standard of review on this question is an abuse of discretion, which, as this court has previously stated, is the most deferential standard to the trial court. The trial court abuses its discretion only if it acts arbitrarily or if this decision exceeds all bounds of reason. The trial court did not abuse its discretion in this case. As stated in the case of Lee v. Tulin, the appointment of a receiver is a harsh, equitable remedy that can only be granted if the court is convinced that it is absolutely necessary to prevent irreparable harm. This standard has been called exceptionally stringent, and a speculative fear of laws is an inadequate basis to exercise such a harsh, equitable remedy. In this case, there was no evidentiary hearing requested or held. There was no evidence designated by the plaintiff in his brief on these issues. If you read the motion for summary judgment and the motion to appoint a receiver closely, you'll notice that not even an argument was made that the trust corpus is currently in danger of loss. Lisa McGuire's name is only mentioned twice in the entire document, and that's in the statement of facts. And in the statement of facts, he merely states that she is sister of Gregory and that she's the current trustee. There are no allegations that she's done anything wrong in the document, and as the court noted in its April 25, 2014, order on this issue, there were no untoward allegations against her. Therefore, the court had no choice but to rule against plaintiff on this issue. It is a very strict standard, and plaintiff presented no evidence on the issue. Therefore, the court should affirm on this issue. Now, plaintiff in his appellate brief raises the issue that, well, Lisa McGuire is the sister of Gregory Dillard, a former trustee. Therefore, there's some sort of inherent conflict of interest there. Notably, Lisa McGuire is also related to the plaintiff. These are two family trusts that she's administering. All the parties are related here, and there's no evidence of collusion between Lisa or Gregory. There's no evidence that they spoke about these issues or that she's been directed by Gregory in any way. Moreover, in the argument today, the plaintiff argues that the resolution of the first issue, the land swap transaction issue, is somehow dependent upon, or excuse me, the receivership issue is dependent upon the land swap transaction. That is not the case. Even if this court reverses on the first issue, the noble review of the trust documents, there's still no evidence that the trust is currently in danger of loss. That transaction occurred years ago. Even if it's reversed, there's been no allegations against Lisa McGuire. She's done nothing since 2011 but faithfully administered the trust according to its terms. And to presume that she wouldn't be able to handle the transaction because of some sort of reversal two years ago, I think is improper. And it doesn't meet the exceptionally stringent standards set forth by the appellate courts of the state. So therefore, we ask you to affirm on this issue. Thank you. Thank you, counsel. May it please the court. I'm Richard Krueger and I represent Gregory Dillard and the Dillard Farm Family Limited Partnership. What I'd like to address here is just one issue. And that is the second ground we would submit to affirm the trial court. In the trial court, and that issue is whether the section 4.09 of the Illinois Trust and Trustees Act provides a defense here for Gregory Dillard and should be used to affirm the trial court. Now, this issue was briefed with the summary judgment but it was not addressed by the trial court in its opinion. The section 4.09 of the Illinois Trust and Trustees Act consists of two sentences. The second sentence was adopted in a public act in 1996. And that provision provides that if the trustee uses his reasonable care, skill, and caution in the selection of an agent, the trustee may rely on the advice and recommendation of the agent without further investigation. And furthermore, that if there's no responsibility for actions taken by the trustee or omitted by the trustee upon the advice and recommendation of the agent. In our brief, we cite that Gregory Dillard, we cite what he did in obtaining these agents, how he decided to hire as the attorney Joseph Schroeder from Marshall, Illinois, and then the appraiser Ron Abel from Ridgeway, Illinois. And this traces everything that he did. He first met with the attorney to see if he had authority to do this, asked the attorney to review the trust documents. The attorney said that he needed an appraiser. Greg sought and obtained an appraiser and then met back with the attorney and did this exchange. He said that he did this in an attempt to eliminate some fractional interest between these trusts and to give more cash funds for Jimmy because he was running out of money. So this is a second ground in applying this provision to the situation as a second ground to affirm Judge Webb's decision. Now, in the reply brief of Jimmy Dillard, he cites a 1977 Illinois Supreme Court case of Stewart v. Continental, Illinois, for the proposition of failing to carry out a trust document even though it's negligent or mere forgetfulness is a breach of trust and thus is a breach of fiduciary duty as a matter of law. Given this fact situation, I do not believe that that is any longer any good law. That was 19 years before this provision was adopted in the Trust and Trustees Act. And the court in Stewart v. Continental did not consider the same fact situation here where we have agents, an attorney, an appraiser who were hired by the trustee, relied on the trustee, used skill, care, and caution in obtaining their services. And we would ask that this decision be affirmed. Thank you, counsel. Thank you. Counsel? May it please the court. Counsel, my name's Robert Wilson. I represent Gary Dillard and Mary Ann Dillard in this cause. I want to clarify just a couple of things. Mr. Cantrell alluded to the whole issue of cell dealing. The trial court dealt with this and made a recitation of what Gregory Dillard's testimony was and says the court finds that factual issues exist as to whether said transactions were self-serving in nature. To that end, the court finds that summary judgment is inappropriate. So the court didn't rule about whether there was cell dealing. The court didn't rule about whether there was unjust enrichment. And, in fact, the record will show that the only appraisals that are in the file are those that were obtained by Gregory Dillard. He got certified appraisals of the whole thing. And during the discovery process, the record will show that we repeatedly requested appraisals from the plan to determine whether there was really an issue, whether there was really any kind of unjust enrichment. This is a case where the trustee methodically went out, tried to figure out what the properties were worth, tried to get additional cash for Jimmy Dillard, who was running through his cash, and made a transaction after determining that the transaction was countenanced by the trustee. Now, the trial court in its ruling really synthesized what the ultimate determination was by saying Section 7 contains no limitations as to the powers of the trustee. Instead, it's a directive for the distribution upon the death of the grantor. The trial court concluded that neither Section 12 nor Section 7 provide or intimate that the consent of both Gary Dillard and Jimmy Dillard is necessary to convey the real estate. Instead, Section 7A provides for the term of the trust and requires the acquiescence of both of them to have an early termination of the trust. Now, contrary to what was said in oral argument a few minutes ago, the trust was not terminated. The trust was still alive. There were some distributions made in cash, but what the trustee did was the trustee sold properties to raise cash and provide for a division of the trust assets. That's what's actually in the record. I'd like to recite for the court very quickly just a few things. Mr. Cantor recites the portions of Paragraph 7 which say the trust shall continue for a term of 10 years after the death of the grantor unless both Jimmy R. Dillard and Gary D. Dillard or the survivor of them agree or direct otherwise. So this 10-year limitation that required veto power to each one of them only spoke to shortening the term of the trust. It didn't have anything to do with the real estate. And in Paragraph 12, where it deals with real estate, it says in subparagraph F, real estate, this is the powers of the trustee, to sell, convey, buy warranty deeds, special warranty deeds, quick claim deeds or otherwise, release, mortgage, encumber, lease, partition, approve, manage, protect, subdivide any real estate. Further states to sell on any terms to convey the mortgage, pledge, or otherwise encumber. And then most importantly it says to grant options to lease and options to purchase the whole or any part of the reversion. Goes on to say to partition or to exchange said real estate. That's what the trustee did. The trustee did exactly what is stated within the exact terms of the Catherine Dillard Trust. And Mr. Cantrell would have the court believe that Paragraph 7, which the trial held related to distributions, in some how is more specific with respect to real estate than Paragraph 12-F. 12-I refers to a number of specifications for the sale of real estate, but it said to partition or to exchange said real estate. Now, Paragraph 12, which Mr. Cantrell says is not as specific as Paragraph 7, can be compared just on length basis. Paragraph 7 is about a page long if you take the whole thing. Paragraph 12, as Mr. Cantrell says in his brief, is four pages long. It's very, very specific and it uses 18 of the 26 letters in the alphabet as it goes through the subparagraphs in Paragraph 12. It's obvious from a review of the trust, at least it's obvious to us and we hope that you adopt our interpretation, that Paragraph 12 gave the powers to the trustee. Paragraph 7, as referred to by Mr. Cantrell, spoke to this 10-year term and the ability to shorten that 10-year term up. Now, none of us know what the intent of Catherine Dillard was when she had this trust drafted, but certainly the intent had to be that they could deal with real estate. Otherwise, the trustee would be there for a 10-year period of time without the ability to deal with coal, without the ability to deal with oil and gas, all of which is very, very active in this particular area. If you adopt Mr. Cantrell's interpretation, then the trustee couldn't sign an oil lease, could not sell the coal, couldn't lease the coal, couldn't obtain what would be the natural income from the trust in this area. Mr. Cantrell said in his argument that the income must be distributed annually and the trustee has discretion to distribute from the corpus. Well, at inception, the only corpus of the trust was the real estate. There wasn't any other corpus. So if the trustee had discretion to distribute from the corpus, the trustee would have had to do that from a sale or other actions with respect to the real estate. You've got the income, and the trust says the income is distributed annually, and you've got the corpus of the trust, which is only the real estate. The absence of the ability to deal with the real estate obviates what Mr. Cantrell said about the trustee's discretion to distribute a portion of the corpus. Now, the way this worked mechanically was that the Catherine Dillard Trust, which is at issue today, made the distributions ultimately to the Jimmy Dillard Trust, as Mr. Cantrell said, because Catherine Dillard determined she didn't want Jimmy to have it outright. And the Jimmy Dillard Trust, in turn, made discretionary distributions to Jimmy Dillard according to an ascertainable standard. If you read the Jimmy Dillard Trust, which is in the record and before the court, it's obvious that the intent of the trustee was to make sure that Jimmy Dillard didn't drink all the money in it. And that's why she had the Jimmy Dillard Trust for Jimmy Dillard, and that's why she put Gary Dillard in charge of the land and the money and the rest of the assets, and Jimmy Dillard's children, who she was familiar with before she died. It seems to me that there are several leaves of faith in here. The leaf of faith that it required Jimmy Dillard's permission to sell the real estate is stated nowhere in the trust. Mr. Cantrell's reference to the term, unless otherwise stated herein, immediately followed the admonition that which powers are in addition to and not a limitation of their common law and statutory powers, unless otherwise stated herein. The court held, the trial court held, and we would suggest that that interpretation was right on, that that particular language, unless otherwise specified herein, spoke only to the powers of the trustee. If Katherine Dillard wouldn't limit the power of the trustee, she could do it in paragraph 12. But other than that, what she said in paragraph 12 was in addition to and not in limitation of their common law and statutory powers. There's no evidence that Greg Dillard did anything wrong. There's a suggestion that there was this big Machiavellian conspiracy to transfer the land here and there, but the bottom line is this, is that the fair market value of the land was determined. A division was made among the trust with respect to the land. Cash was raised by a sale of a portion of the land. That cash landed in the Katherine Dillard Trust. The trust was not terminated, but that money was there to make distributions on to Gary, from Gary Dillard as trustee to the Jimmy Dillard Trust. I misspoke. At the time that happened, Greg Dillard was the trustee. It's just a strain of the whole thing to arrive at the interpretation that there was some limitation on the trustee's ability to deal with real estate. Now we believe, certainly, that the trustee had a duty to deal fairly with the real estate. If there were conveyances, to make those conveyances on the basis of fair market value, not to breach his fiduciary duty by taking advantage of Jimmy Dillard in any fashion, and we believe the trustee did that. The trial court did not speak to that particular subject. The trial court only spoke to, in the partial summary judgment, the trial court just said this, the trustee had authority to deal with the real estate. 7, paragraph 7, only dealt with the term, and does not limit the trustee's ability to deal with the real estate. The court reserved all of the issues with respect to unjust enrichment or self-dealing, and those are deals to dance with at the trial court level to determine what was the fair market value of the property, and Jimmy Dillard certainly has an opportunity at that time to make presentations to the court of his own certified, Illinois certified appraisals, and to let the trial court make a determination about whether or not the Illinois certified appraisal that Greg Dillard relied on when he engaged in this transaction was indeed justifiable, or whether the trial court makes a determination that those values were too low. They may find that the values are too high, but at the end of the day, nobody has been shown to do anything wrong at this point. We just had accusations, allegations, and innuendo with respect to any self-dealing or unjust enrichment. The issue before the court today is very simply, did Greg Dillard have the authority to deal with the real estate under the Catherine Dillard Trust? If y'all have any questions, I'd be pleased to respond. I don't believe we do, Counsel. Thank you very much. Counsel? Thank you, Counsel. Briefly, Your Honor, as to Gregory Dillard's argument that obtaining advice from an attorney and obtaining the appraisals should allow him to move forward with this transaction as a matter of law, under the Trust and Trustees Act, and I don't believe that's correct, the Trust and Trustees Act also states, a person establishing a trust may specify in the instrument the rights, powers, duties, etc., applicable to the trustee, beneficiary, and others. Those provisions, where not otherwise contrary to law, shall control notwithstanding this act. The legislature specifically says, regardless of what this act says, what's in the trust document controls. Excuse me. The legislature said that. Lastly, I disagree with Mr. Wilson's argument that the Catherine Dillard Trust was not terminated when this transaction took place on May 26, 2009. If we track Section 7, which is, again, the distributions that only apply after the death of Catherine Dillard, Subsection A1 is a gift of $30,000 to each daughter. Subsection A2 is a gift of additional personal property to the sons. Subsection A3 starts with two sentences, the first of which says, Third, the balance of the trust estate, exclusive of real estate, So everything except the real estate is given immediately to the Jimmy Dillard Trust and Gary Dillard. So the only thing left is the real estate. And then the last sentence, Subsection A3, states, All real estate, including coal, mineral rights, etc., owned by the trust, shall continue to be held in trust and administered as follows, colon. Subsection B, below that, thus applies to that sentence, or is governed by that sentence. All real estate shall continue to be held in trust and administered as follows, And what it states is that when the trust is terminated, that will go to the Jimmy Dillard Trust and Gary Dillard as tenants-in-common. Because that was not done, Section 7 of the trust was violated. Because Section 7 only applied to the purpose of the trust as constituted on the date of her death, as we know from the introduction. So because that real estate was not given to the Jimmy Dillard Trust as a tenant-in-common, Section 7 was violated. Secondly, Section 7 was also violated because the trust was terminated in 2009, five and a half years after her death, without Jimmy Dillard's agreement. Unless the Court has any questions of me, I thank you for your time and ask that you reverse the Court's decision. I don't think we did. Thank you, Counsel. We appreciate briefs and arguments. Counsel will take the case under advisement.